IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**CHRISTOPHER BUCHANAN**                                            **PLAINTIFF**
**ADC #176655**

v.                          No: 2:21-cv-00096 JM-PSH

**DARRELL ELKIN**                                                   **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Christopher Buchanan, an inmate at the Grimes Unit of the Arkansas Division of Correction (ADC), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 19, 2021, alleging that he endured unconstitutional conditions at the St. Francis County Detention Center ("SFCDC") while he was held there as a pre-trial detainee from 2018 to 2020 (Doc. No. 1). Buchanan's application to proceed *in*

*forma pauperis* was granted (Doc. No. 5), and his claims against medical provider Darrell Elkin in his individual capacity were allowed to proceed after screening. *See* Doc. Nos. 7 & 10.  Buchanan alleged that Elkin provided inadequate treatment for several medical conditions, including a sexually transmitted disease, severe rash, itching, shingles, abdominal issues, weight loss, and sleep apnea.  Doc. No. 1.  Buchanan's remaining claims, including those regarding black mold and cold temperatures, were dismissed.[1]  Doc. No. 10.  His claim that Elkin failed to adequately treat a sexually transmitted disease ("STD") was subsequently stricken because the same claim was pending in another case, *Buchanan v. May, et al.,* Case No. 2:21-cv-00013 DPM (*"Buchanan I"*).[2]  Doc. Nos. 52 & 54.  Buchanan previously moved for summary judgment in this case, but his motion was denied because he did not file a separate statement of undisputed material facts as required by Local Rule 56.1, Rules of the United States District Court for the Eastern District of Arkansas, and because he devoted much of his brief and documentation to issues unrelated to his pending claims in this case.  *See* Doc. Nos. 76 & 79.

---

[1] Buchanan's claims regarding black mold and cold temperatures are currently pending in *Buchanan v. Maye, et al.,* 2:22-cv-00020-KGB-ERE (*"Buchanan III"*).  In *Buchanan III*, United States Magistrate Judge Edie Ervin provides a thorough description of Buchanan's currently pending lawsuits, including this case.  *See* Doc. No. 5 in *Buchanan III*.

[2] Buchanan's STD claims have since been dismissed in that case.  *See* Doc. Nos. 190 & 198 in *Buchanan I*.

Before the Court is a motion for summary judgment, brief-in-support, and statement of facts filed by Elkin (Doc. Nos. 66-68), and a response and statement of facts filed by Buchanan (Doc. Nos. 72-74). At the Court's direction (*see* Doc. No. 95), Elkin provided supplemental documentation (Doc. No. 106). Buchanan has filed a response to the supplemental documentation (Doc. No. 112). In addition, the Court will consider the documentation attached to Buchanan's motion for summary judgment (Doc. No. 56) where he has made specific citations to it in his responsive pleadings.[3] *See* Doc. No. 76. Elkin's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and he is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir.

---

[3] The Court will not sift through Buchanan's documentation to find support for his factual contentions. *See Crossley v. Georgia-Pacific, Corp.*, 355 F.3d 1112, 1113-14 (8th Cir. 2004) (affirming the grant of summary judgment because a plaintiff failed to properly refer to specific pages of the record that supported his position).

2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Facts

#### *Buchanan's Claims*

Buchanan alleges that Elkin failed to adequately treat him for several medical conditions, including severe rash, itching, shingles, abdominal issues, weight loss, and sleep apnea. *See* Doc. Nos. 7, 10, 52 & 54. Specifically, Buchanan alleges, in relevant part:

> Dr. Elkin refused to refer Plaintiff's needed medical treatment to any specialist while Plaintiff suffered a servered rash, itching, shingles, nausea, vomiting, abdominal pain, diarrhea, night sweats, fever and atrophy weight loss of 35 pounds; here, Plaintiff contends that the pain he suffered was objectively serious that was caused by the named Defendant Dr. Elkin by his denial of the minimal civilized measure of life's necessities and this Defendant who is suppose to be a professional provider had acted with a sufficiently cupable state of mind, that was deliberate indifference to Plaintiff's medical needs while freezing in sub-temperatures . . .

> . . .
>
> Plaintiff strongly contends that before his SFCJ confinement, he was prescribed a sleep apnea machine for his obstructive breathing, this required machine Plaintiff has had since 1-1-2016 and Plaintiff has his medical records detailing his history of present illness from the Arkansas Dept. of Health in St. Francis County Health Unit that's dated 9-16-2019 of Plaintiff's confinement time; making the named Defendant Dr. Elkin fully aware of Plaintiff's medical need of the required . . . sleep apnea machine.

Doc. No. 1 at 6-7, 11-12.[4]

### *Elkin's Facts*[5]

On November 8, 2018, Buchanan was booked into the SFCDC on a Capital Murder charge. *Arrest and Booking Sheet* at 1. At that time, he weighed 335 pounds. *Id*.

According to his sworn affidavit, Defendant Elkin is an advanced healthcare practitioner who has practiced in the correctional setting for the past 25 years. *Elkin*

---

[4] Buchanan's statements are transcribed verbatim without any corrections for misspellings or mistakes.

[5] In support of his statement of indisputable material facts, Elkin submitted copies of Buchanan's SFCDC arrest and booking information (*"Arrest and Booking Sheet"*) (Doc. No. 68-2); SFCDC requests and grievances (Doc. No. 68-3); and SFCDC medical file ("*Jail Medical File*") (Doc. No. 68-4), along with the affidavit of Lieutenant Jonnie Jones, authenticating those records. *See Jones Affidavit* (Doc. No. 68-1) at ¶¶ 3-4. Elkin also submitted Buchanan's medical records from the ADC ("*ADC Medical Records*") (Doc. No. 68-5); a copy of a July 12, 2020 sick call request (Doc. No. 106-3); and two affidavits: *Affidavit of Darrell Elkin* ("*Elkin Affidavit 1*") (Doc. No. 106-1) and *Second Affidavit of Darrell Elkin* ("*Elkin Affidavit 2*") (Doc. No. 106-2). The Court omits any facts that only relate to Buchanan's complaints of cold or treatment of a sexually transmitted disease, as those do not relate to the claims pending in this case.

*Affidavit 2* at ¶ 1.  He reviews medical requests submitted by inmates to jail administrators and then examines the inmates when he visits the jails each week.  *Id.* at ¶ 3.  Elkin charts "by exception" meaning that he only notes exceptions to baseline findings, thus eliminating the need to document routine, stable patient information.  *Id.*  He claims that if an inmate's medical request does not contain any notes by him, he did not see that inmate.  *Id.* at ¶ 5.  He also does not review inmate grievances which are submitted to the jail administrator.  *Id.* at ¶ 6.  Elkin attached to his affidavit all the records and documentation he had in his possession concerning Buchanan.  *Id.* at ¶ 21.

On November 9, 2018, Buchanan authored a handwritten request/grievance, stating: "I have requested to speak to someone in medical for my medical condition my sleep apena machine having trouble breathing.  I continue to be denied medical and for STD treatment."  *Buchanan's Motion for Summary Judgment* (Doc. No. 56) at 59.  The sick call is not signed by anyone to acknowledge it was received, and there is no answer to it.  *Id.*  Elkin claims he never received this request.  *Elkin Affidavit 1* at ¶ 3.

On November 20, 2018, Buchanan authored a handwritten sick call request, stating, "I am requesting to see doc about my STD my sleep machine, I'm having major headache, breathing black mold lower back pain swore on my penis area, vomiting."  *Buchanan's Motion for Summary Judgment* at 60.  There is no signature

indicating that medical staff received this request, and there is nothing written next to "results of request." *Id.* Elkin claims he never received this request. *Elkin Affidavit 1* at ¶ 4.

On August 12, 2019, Buchanan submitted a sick call request, stating:

> I am requesting to get some sleeping medication been up for 24 hours also need some medicine for a headache and lower back pain and glasses need fix also can I get for bow clean so I can take a crap. Also can I get [illegible].

*Arrest and Booking Sheet* at 3. There is no signature indicating that medical staff received this request, and there is nothing written next to "results of request." *Id.* However, Elkin states he received this sick call request, but that sleep medications are contraindicated in the jail setting.[6] *Elkin Affidavit 2* at ¶ 8. He prescribed 800 mg of Ibuprofen for Buchanan on August 14, 2019. *Jail Medical File* at 6; *Elkin Affidavit 1* at ¶ 6. That prescription was renewed on September 17, 2019, November 4, 2019, December 10, 2019, January 15, 2020, March 9, 2020, and April 6, 2020. *Jail Medical File* at 6-7. Buchanan received 800 mg of Ibuprofen twice per day from August 15, 2019 – November 13, 2020. *Id.* at 25-43, 53-54; *Elkin Affidavit 1* at ¶ 7.

---

[6] The copy of this request was submitted as part of Buchanan's arrest and booking information rather than his jail medical file. *Arrest and Booking Sheet* at 3. The log of his requests in his jail medical file begins on September 13, 2019. *Jail Medical File* at 23.

On September 13, 2019, Buchanan submitted a sick call request, stating "Requesting alcohol pads for swore [sic] bump that I have an proixcide [sic]." *Jail Medical File* at 23. On September 16, 2019, non-party Larry Jones responded, stating: "Advised the jailer to bring alcohol pads and peroxide." *Id.* Elkin claims he did not receive this medical request. *Elkin Affidavit 1* at ¶ 8.

On October 9, 2019, Buchanan submitted a sick call, stating, "Need medicine for my nerves still having pain issues right arm lower an upper back pain I was gabapintene I was on 600mg an other pain medicine due to accident I've had an head trama." *Jail Medical File* at 17. Larry Jones responded on October 15, 2019, stating: "forwarded to medical." *Id.* at 20. Elkin states he did not receive this medical request. *Elkin Affidavit 1* at ¶ 10.

On October 25, 2019, Buchanan submitted a sick call, stating: "I am requesting for sum [sic] ibprofene [sic] I am having headace [sic] back an arm problem please an ty [sic]. *Jail Medical File* at 16. On October 25, 2019, Larry Jones responded, stating: "ok." *Id.* Elkin states he did not receive this request. *Elkin Affidavit 1* at ¶ 10.

On January 28, 2020, Buchanan submitted a sick call, stating, "Can I see the doc I have a sever cold sore throat stuffy clog nose feet sore mild headache cough running nose." *Jail Medical File* at 11. Larry Jones responded the same day, stating: "forwarded to medical." *Id.* Elkin states he was called on January 29, 2020, about

Buchanan's complaints, and he prescribed Amoxicillin, an antibiotic used to treat bacterial infections, and Prednisone, a steroid used to treat inflammation, for a sinus infection. *Elkin Affidavit 2* at ¶ 15. *See also Elkin Affidavit 1* at ¶ 15; *Jail Medical File* at 6. Buchanan received those medications as prescribed. *Jail Medical File* at 43-44.

On January 29, 2020, Buchanan submitted a sick call, stating, "I would like to see the doc about getting blood tested for std an hiv tested also have flu like system running nose sneezing coughing headache cant sleep barley can eat throwing up a little." *Jail Medical File* at 10. Larry Jones responded the same day, stating: "forwarded to medical." *Id.* On February 3, 2020, Elkin was called about Buchanan's complaints and prescribed Doxycycline, an antibiotic used to treat infections, and an additional round of Prednisone, for a respiratory infection. *Elkin Affidavit 2* at ¶ 16. *See also Elkin Affidavit 1* at ¶ 16; *Jail Medical File* at 6. Buchanan received those medications as prescribed. *Jail Medical File* at 43-44, 49-51. Elkin received another call regarding Buchanan on February 12, 2020, and prescribed additional rounds of Doxycycline and Prednisone. *Elkin Affidavit 2* at ¶ 17. *See also Elkin Affidavit 1* at ¶ 17.

On May 26, 2020, Buchanan submitted a sick call, stating, "I need sum acid reflat [sic] pills chest been hurting with acid please an ty tuns can due temporary.

*Jail Medical File* at 9.  Larry Jones responded the same day, stating, "Ask the jailer for some when he makes his rounds."  *Id.*

On July 12, 2020, Buchanan submitted a medical call, stating:

> I am requesting to see a medical doc due to back trama and numerous amount of headache on the right side of my head back side right side and in the middle of my head ibprofin is not working also my feet has been swollen for the past couple months started in march and my right hand thumb and first finger feels num feels unusual also requesting to see a dept of health specialist and eye doc dealing with my eyes am seeing black dots on numerous occasion

Doc. No. 56 at 119; Doc. No. 106-3.  Larry Jones responded, stating: "forwarded to medical."  *Id.*  In response to this medical request, Elkin diagnosed Buchanan with mild peripheral edema and prescribed him a diuretic on or about July 12, 2020.  *Elkin Affidavit 2* at ¶ 9.  *See also Elkin Affidavit 1* at ¶ 21.  From July 20, 2020, through November 13, 2020, Buchanan received 12.5mg of hydrochlorothiazide (a diuretic).  *Jail Medical File* at 47-52.

On July 20, 2020, Buchanan submitted a request, stating,

> When doc came to the cell had spoke with doc outside the cell had no privacy to talk to the doc dealing with my medical call and could not speak with the doctor how I wanted to which was unfair and violates hippa law and unconstitutional which also violates certain amendments.

Doc. No. 68-3 at 89. On July 21, 2020, Larry Jones responded, stating: "Put in a medical request with the same info on it."  *Id.*

On August 30, 2020, Buchanan submitted a sick call, stating, "Need to see medical doc." *Jail Medical File* at 8.  Larry Jones responded, stating: "forwarded to

medical." *Id.* Buchanan submitted an identical sick call on September 12, 2020. *Id.* There is no response. *Id.*

On September 12, 2020, Buchanan submitted a request, stating, "I ask the jailor told me to ask u [sic] Larry about my medical can I be moved fm [sic] upstairs having [sic] chest pain. *Jail Medical File* at 96-97. On September 22, 2020, Larry Jones responded, stating: "Jonnie is the only person who moves inmates but Ill forward this request to her." *Id.*

On September 28, 2020, Buchanan submitted a sick call, stating: "Need to see medical doctor." *Jail Medical File* at 8. Larry Jones responded, stating: "forwarded to medical." *Id.* According to Elkin, Buchanan stated that ibuprofen was no longer effective, so he changed his prescription to Robaxin (methocarbamol). *Elkin Affidavit 2* at ¶ 10; *Elkin Affidavit 1* at ¶¶ 24-25. From September 30, 2020, to November 13, 2020, Buchanan received 750 mg of methocarbamol. *Jail Medical File* at 50-52.

On October 20, 2020, Buchanan submitted a sick call, stating, "In the beginning the doc gave me an ointment for my swollen feet which was working for me can I get that ointment back." *Jail Medical File* at 8. Jones responded, stating, "Forwarded to Medical." *Id.* Elkin states that he checked pharmacy records and asked jail staff to check their records for verification, but he found no record that

Buchanan had been prescribed any foot ointment. *Elkin Affidavit 2* at ¶ 12; *Elkin Affidavit 1* at ¶ 26.

On October 23, 2020, Buchanan submitted a request, stating, "I need to speak with ms jonnie privately about a medical situation asap." Doc. No. 68-3 at 104-105. On October 26, 2020, Jones responded, stating: "Forwarded to Jonnie."[7] *Id.* Two days later, Buchanan submitted a sick call, stating: "Can I speak with doc about a medical issue privately Larry told me to put it in medical form." *Jail Medical File* at 8. On October 26, 2020, Jones responded, stating, "forwarded to medical." *Id.* Elkin states that he responded that he would see Buchanan during his next visit. *Elkin Affidavit 1* at ¶ 27. He further states that Buchanan submitted two other medical requests that day, complaining of back pain and inquiring about Midsouth medications.[8] *Id.* Elkin states that he prescribed ibuprofen for back pain and referred the question about Midsouth medications to jail administration. *Id.*

According to his affidavit, Elkin examined Buchanan numerous times and provided him with medical treatment. *Elkin Affidavit 1* at ¶ 33. He does not recall Buchanan submitting any medical requests or complaining to him about a rash, itching, shingles, abdominal issues, night sweats, fever, atrophy weight loss, sleep

---

[7] Although this request refers to a medical issue, it does not appear to be relevant to Buchanan's claims against Elkin in this case.

[8] Those medical requests do not appear to be included with the others in Buchanan's medical jail file. *See Jail Medical File* at 8.

apnea or need for a C-PAP machine. *Id.* at ¶¶ 28-32. He stated that he did not request Buchanan's medical records because he was unaware of his purported sleep apnea. *Id.* at ¶ 32.

On November 5, 2020, Buchanan submitted a sick call, stating, "Need to see doc for my eye." *Jail Medical File* at 8. Jones responded: "have the jailer give you an ADC medical request." *Id.* On November 13, 2020, Buchanan was transferred to the custody of the ADC. *Arrest and Booking Sheet* at 1. At that time, ADC medical personnel noted that Buchanan weighed 336 pounds. *ADC Medical Records* at 1. On November 18, 2020, ADC medical personnel noted that Buchanan weighed 309 pounds. *Id.* at 112.

According to his ADC medical records, Buchanan did not mention any purported sleep apnea or need for a C-PAP machine during his ADC medical intake, although he mentioned several other medical conditions. *Id.* 1-5, 34-35. ADC medical personnel noted that Buchanan's neck and lungs both appeared and sounded normal. *Id.* at 1.

On March 24, 2021, Buchanan submitted a medical request, stating, "I HAVE SLEEP APENU AN I USE TO HAVE THE MACHINE WAS TRYING TO GET BACK ON IT PLEASE GOD BLESS." *ADC Medical Records* at 44-45. On March 27, 2021, Buchanan was examined by ADC medical personnel, who noted: "no findings on exam that suggest a need for further treatment at this time." *Id.*

On March 29, 2021, Buchanan submitted a medical request, stating: "SAME REQUEST REQUESTIN TO SEE DOC FOR SLEEP APENA ALSO FOR MY HEADACHE." *ADC Medical Records* at 43. On April 9, 2021, ADC medical personnel evaluated Buchanan, noting his reported history of sleep apnea and a request for medical records related to his use of a CPAP machine. *Id.* at 8-10. At this encounter, Buchanan's weight was recorded at 317 pounds, and it was noted that he had lost 13 pounds since December 4, 2020. *Id.* at 8. He was placed on a medium calorie diet and encouraged to lose weight. *Id.* at 10.

### *Buchanan's Disputed Facts*

Buchanan does not specifically dispute the majority of facts presented by Elkin. *See* Doc. No. 73. He maintains that he does not know why Elkin prescribed him ibuprofen and states that Elkin failed to treat him for being cold or having flu-like symptoms. *Id.* at 2-3. He indicates that he saw Elkin in person only once on July 20, 2020, but not in private. *Id.* at 3-4. Buchanan disputes that he weighed 336 pounds on November 13, 2020, but admits he weighed 309 pounds on November 18, 2020. *Id.* at 6. He denies that he did not mention his purported sleep apnea during his ADC intake and asserts that Elkin omitted certain ADC records showing that he received some treatment for an obstructive airway. *Id.* at 6-7. He indicates that the ADC delayed treatment for sleep apnea due to Covid lockdowns. *Id.* Buchanan further asserts that he did submit the unsigned sick calls complaining

about sleep apnea. *Id.* at 8-9. And he questions why Elkin prescribed ibuprofen so often if he did not receive Buchanan's sick calls dated September 13, 2019, October 9, 2019, and October 25, 2019. *Id.* at 10-11.

Almost the entirety of Buchanan's response to the supplemental information provided by Elkin concerns Buchanan's allegation that Elkin did not treat him for an STD. *See* Doc. No. 112 at 1-12. He generally alleges that Elkin never examined him, taking his vital signs, and did not treat him for his various medical complaints, including back trauma, swollen feet, sleep deprivation, and sleep apnea. *Id.* at 5. He presents medical documents showing that he was diagnosed with sleep apnea before he was incarcerated at the SFCDC. *Id.* at 77-79.

## IV. Analysis

Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate

medical care).[9]  To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs.  *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it.  *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).  Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The undisputed material evidence in the record fails to establish that Elkin was deliberately indifferent to Buchanan's serious medical needs.  In this case, Buchanan alleges that Elkin did not treat him for severe rash, itching, shingles, abdominal issues, weight loss, and sleep apnea.  There is no evidence that Buchanan submitted a single sick call concerning a rash, itching, shingles, or weight loss. And

---

[9] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees.  183 F.3d at 905.  The Court acknowledged that pretrial detainees' claims may be subject to an objective reasonable test rather than the subjective deliberate indifference standard.  *Id.* The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

he mentioned vomiting only twice, along with other complaints: November 20, 2018, and January 29, 2020. *See Buchanan's Motion for Summary Judgment* at 59; *Jail Medical File* at 10. Furthermore, Buchanan does not provide any evidence that he actually had shingles, a severe rash, or serious abdominal issues at any point. Likewise, while he may have lost some weight while incarcerated at the SFCDC, there is no evidence he lost too much weight or suffered any sort of atrophy; in fact, his ADC records show that it was recommended he lose weight in April 2021, even after a recent weight loss was noted. *ADC Medical Records* at 10. Accordingly, there is no evidence that Buchanan had a serious medical need with respect to severe rash, itching, shingles, abdominal issues, or weight loss, that Elkin disregarded.

There is some evidence to support Buchanan's assertion he has sleep apnea. He received such a diagnosis before his incarceration in the SFCDC. *See* Doc. No. 112 at 77-79. Buchanan also provided copies of two medical requests from November 2018 concerning sleep apnea and his request for a sleep apnea machine. *Buchanan's Motion for Summary Judgment* at 59-60. However, there is no evidence that staff at SCFDC received these requests, that they were forwarded to Elkin, or that Elkin disregarded them with deliberate indifference to Buchanan's condition. And while Buchanan disputes Elkin's contention that he did not receive these

requests, Buchanan has not come forward with any proof showing that he did.[10]  In fact, the evidence in the record does not indicate that Buchanan complained about sleep apnea after November 2018 until he was incarcerated at the ADC in 2021, while he complained about a number of other medical ailments during his incarceration at SFCDC.  The evidence also shows that Elkin treated Buchanan for the complaints he knew about.  For example, he gave him ibuprofen in August of 2019, in response to a complaint of pain; he prescribed antibiotics and a steroid for a sinus infection and then for a respiratory infection in January and February of 2020; he prescribed a diuretic in response to a complaint of swelling in July 2020; and he prescribed a new pain medication when Buchanan reported that ibuprofen was no longer working in September 2020.  *See Elkin Affidavit 2* at ¶¶ 8-12, 15-17 (and attached records).

In sum, the record does not support that Buchanan (or anyone else) made Elkin aware of his need for a sleep apnea machine or that Elkin, with deliberate indifference, refused to treat his apnea. The undisputed facts establish that there is

---

[10] A plaintiff's unsupported statement is insufficient to defeat a properly supported motion for summary judgment. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

no genuine dispute as to any material fact, and Elkin is entitled to judgment as a matter of law.

## V.  Conclusion

The undisputed facts establish as a matter of law that Elkin's treatment of Buchanan does not evidence deliberate indifference to his serious medical needs. The undersigned therefore recommends that Elkin's motion for summary judgment (Doc. No. 66) be granted.  Judgment should be granted in favor of Elkin on Buchanan's pending claims of deliberate indifference.

SO RECOMMENDED this 9th day of August, 2023.

_____
UNITED STATES MAGISTRATE JUDGE